UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                    :
ELLEN ZWEIFACH,                                     :
                                                    :
                              Plaintiff,            :        **<u>DECISION & ORDER</u>**
                                                    :
              - against -                           :        13 Civ. 3229 (BMC)
                                                    :
67TH ROAD HOUSING CORPORATION and        :
MARK GREENBERG REAL ESTATE CO.,                     :
INC.,                                               :
                                                    :
                              Defendants.           :
                                                    :
---------------------------------------------------------- X

**COGAN,** District Judge.

      Before me is plaintiff's [19] motion for an order holding defendants in civil contempt,

commenced by Order to Show Cause, as twice supplemented.  For the reasons that follow, the

motion is denied.

## DISCUSSION

      The relevant factual and procedural backgrounds overlap.[1]  On October 31, 2013, I So

Ordered the parties' stipulation of settlement of plaintiff's claims under the Fair Housing Act and

the Americans with Disabilities Act (the "Settlement"), concerning certain disability

accommodations at plaintiff's apartment building.  The Settlement, in relevant part, required of

defendants that they "install, at their cost, . . . automatic doors in the front entrance of the

Building, and shall do so as quickly as is practicable."  It was apparently defendants' intention

from the outset to incorporate that accommodation into a structural renovation of the building's

entrance, at least in part to ensure that the doors, once installed, would operate safely and comply

---

[1] The facts set forth herein, and upon which I base my decision, are drawn from the affidavits and exhibits submitted
by both parties.

with building codes.  Almost exactly six months later, defendants terminated the architect who they had hired to plan the renovation because of his continuing delays in providing plans.  A few days later, defendants hired a new architect.

About four months passed before that architect delivered plans, sometime on or before September 22, 2015.  The record is not clear on whether plaintiff was made aware of this development.  On October 6, 2014, plaintiff's attorney served a notice of default, demanding that the accommodation be completed within 14 days.  Such notice was a prerequisite to judicial enforcement of the Settlement.  The next day, defendants' attorney responded by informing plaintiff that bids for the construction were forthcoming, and that the building board expected to select a contractor by October 22, 2014.  This apparently did happen, either on October 20 or on October 22, and defendants informed plaintiff shortly thereafter.  The instant motion followed.

Plaintiff has since agreed, but initially did not agree, that the entrance renovations were a necessary part of the accommodation.  At a Show Cause Hearing on December 4, 2014, asked what would have been a reasonable timeline for the installation of the doors themselves, *i.e.*, the only thing the Settlement requires on its face, plaintiff's counsel asserted that:

> I think this could have been turned around in under six months, Your Honor, from hiring an architect to getting the job completed, and the reason why I think it wasn't done in that time, frankly, . . . is that they actually plan to do this whole other renovation and they decided to bundle it rather than comply. . . .  This had nothing to do with the doors.  This had nothing to do with compliance.

I ordered certain limited expert discovery to help me ascertain whether defendants could safely and legally have complied with the express terms of the Settlement without making the additional renovations.  After several months of litigating the procedure by which that expert discovery would be conducted, on February 9, 2015, the parties filed a letter that in effect agreed

that what the Settlement called for was completion of the full renovation.[2]  I then ordered

additional limited discovery on the issue of whether defendants had made reasonable efforts to

comply with the Settlement so construed.

At a second Show Cause Hearing on March 13, 2015, defendants promised to complete

the renovation by May 29, 2015, and I So Ordered that.  Plaintiff thereafter supplemented her

motion for contempt, seeking compensatory sanctions.  After May 29 had come and gone, I

directed defendants to file a status report.  Plaintiff then filed a letter conceding that the doors

had been installed, but asserting that because of certain issues with their operation, the

accommodation still had not been completed.  Defendants in turn supplemented the record with

averments as to their ongoing efforts to address the issues that plaintiff had identified.

It is well settled that "[a] court has the inherent power to hold a party in civil contempt in

order to enforce compliance with an order of the court or to compensate for losses or damages."

Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (internal quotation omitted).  Civil contempt

"is a powerful weapon under any circumstance and, when founded on a decree that the defendant

could not comprehend, it can be a ruinous one."  Chao v. Gotham Registry, Inc., 514 F.3d 280,

291-92 (2d Cir. 2008) (citing Int'l Longshoremen's Ass'n v. Phil. Marine Trade Ass'n, 389 U.S.

64, 88 S.Ct. 201 (1967)).  A court may exercise this power only when the movant shows that:

"(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of

noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to

comply in a reasonable manner."  King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995).

---

[2] An letter from defendants to the Court, dated December 17, 2014, appeared to concede that a temporary metal structure would have made literal compliance possible without the completion of any additional construction. Plaintiff was free to assert that this much would have been sufficient, and to ask me to So Order it, or to argue that by not providing a temporary accommodation, defendants had failed to exercise diligence.  But she has not so moved, and I will not hold defendants in contempt of court because that avenue of resolution did not occur to her, or was for some other reason not the outcome of this litigation that she or her counsel wanted to achieve.

A clear and unambiguous order "leaves no uncertainty in the minds of those to whom the order is addressed." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 142-43 (2d Cir. 2014) (internal quotation omitted). "The longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt." Id. at 143 (same). "Thus, unless the parties can ascertain from the four corners of the order precisely what acts are forbidden, the order cannot form the basis for contempt." Id. (same) (quoting King, 65 F.3d at 1058).

Plaintiff here seeks an order of contempt because defendants did not exercise diligence to ensure that the entranceway renovation – and thus, the installation of automatic doors – was accomplished "as quickly as is practicable." At the first Show Cause Hearing, plaintiff argued that a standard of reasonableness should be imputed to that language. Defendants do not appear to disagree, and I accept that interpretation.

Plaintiff has cited no case in which an order of civil contempt was sought to enforce settlement language that included a requirement that something be accomplished "as quickly as is practicable." I am aware of only one case in which enforcement of similar language was even sought. See Latino Officers Ass'n City of New York v. City of New York, 519 F. Supp. 2d 438 (S.D.N.Y. 2007), aff'd, 558 F.3d 159 (2d Cir. 2009) (so-ordered consent agreement required the NYPD to provide a draft "know your rights" pamphlet to the civil rights plaintiffs for comment "as soon as practicable" after settlement). But the case is not instructive, because although the plaintiffs "raise[d] the fact that defendants did not submit an initial draft of the Guide to them until . . . nearly 15 months after the [settlement], . . . they d[id] not argue that this amount[ed] to noncompliance with the court order" Id. at 448.

The absence of precedent for a contempt order on similar facts makes me skeptical, but it does not mean that one is *per se* unavailable. Therefore, I must assess the reasonableness of defendants' efforts using common sense and the record that has been put before me. In doing so, I keep in mind the high "clear and convincing" standard that governs this motion, and the fact that plaintiff was free from the outset to obtain defendants' commitment to complete the accommodation by a date certain before releasing her FHA and ADA claims, but chose not to.

As a threshold matter, I find that the accommodation was completed by no later than May 29, 2015, in accordance with my March 13, 2015 Order. Plaintiff's assertion that the accommodation fails to conform to the language of the Settlement because the automatic doors lack an "electric eye," and that the doors "close very quickly after opening," are frivolous on their face and are belied by defendants' detailed submission in response. Thus, the question before me is simply whether defendants were in contempt of the Settlement at any time from October 31, 2013 until May 29, 2015. If so, plaintiff would be entitled to compensation for any damages suffered as a result of that contempt. See Gucci, 768 F.3d at 144 ("It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive.").

I have carefully reviewed the documentary record, and I conclude that, in light of the high bar for a finding of contempt, and the ambiguity in the language of the Settlement, defendants exercised sufficient diligence to avoid the sanction of a contempt order. It is hard to avoid the conclusion that defendants could have moved faster at various stages of this project, and it appears likely that temporary measures would have allowed them to comply with the face of the Settlement before completing the entire renovation, but the standard for contempt is higher.

At least until defendants terminated the first architect, they appear to have exercised at least some diligence. The frequency and increasingly urgent tone of their communications with that architect, to whom they had paid a deposit, suggest that they were doing what they could under difficult circumstances.

That leaves us with the 13 months between the point at which the new architect was hired and the date on which the project was finally completed. It is certainly hard to explain the initial four-month gap between the award of the project and delivery of plans – indeed, defendants do not even attempt to justify it. But from the time that those plans were delivered, apparently about six weeks before this motion was filed, progress began. That it was another eight months before the project was completed does not suggest a genuine sense of urgency, but given the intervening winter, it does not seem to me unreasonable as a matter of law. This is a construction job. They are notoriously hard to complete on a firm timetable.

Plaintiff has proffered the opinion of an expert, who contends that four months would be a reasonable time frame for the completion of a renovation like this one. On the other hand, at the initial hearing in this case, plaintiff's counsel contended that six months would be a reasonable time simply to install the doors. Either way, it seems clear that defendants did not show much hustle, but I cannot say that the difference between four and six and thirteen months is "clear and convincing" evidence that defendants have "not diligently attempted to comply" with a "clear and unambiguous" interpretation of their obligation. King, 65 F.3d at 1058.

Finally, plaintiff's motion notes the language of the Settlement providing that "[i]n the event that Plaintiff is required to file a contempt motion to enforce the terms of this Stipulation of Settlement, she may seek to recover her reasonable attorney's fees and costs in connection therewith." Plaintiff does not assert an independent entitlement to fees under this contractual

provision, and I do not see it as providing any greater entitlement to fees than she would be entitled to in its absence, because a party who successfully prosecutes contempt is, in many circumstances, entitled to recover fees.  See New York State Nat. Org. for Women v. Terry, 159 F.3d 86 (2d Cir. 1998).

In any event, plaintiff has made no factual showing that she was "required" to file the instant motion in order to enforce the settlement.  Indeed, she has made no showing that her motion has had any positive impact whatsoever on the completion date of this accommodation. To whatever extent defendants could have moved faster from November, 2013, until October, 2014, by the time the motion was filed, defendants appear to have gotten their act together. Defendants represented in December, 2014, that their planned renovation would be complete by Spring 2015, and it was.[3]  See Independent Living Aids, Inc. v. Maxi-Aids, Inc., 349 F. Supp. 2d 509, 520 (E.D.N.Y. 2004) (denying fees because "the facts in this case are unlike the situation . . . [where] the motion for contempt was not a 'pointless motion to punish a violation that had already been corrected once it was brought to defendants' attention,'" but rather, "[e]ven though the allegedly infringing conduct had ceased, the Plaintiffs continued to prosecute their motion for contempt, apparently with no regard for monetary or judicial economy"); cf. Jacobs v. Citibank, N.A., 318 F. App'x 3, 4 (2d Cir. 2008) (finding compensatory award of fees appropriate where "the contempt proceeding itself was not an act of futility" because, among other things, the contemnor "denied having violated the underlying order; [and] there remained the possibility that [the contemnor] would again" engage in the conduct prohibited by the order).

From the facts before me, it is not impossible that the threat of plaintiff's motion spurred defendants to begin taking the steps they did to complete the accommodation when they did.  But

_____

[3] This representation appears in the December 4, 2014 letter from defendants' architect.  It appears, based on further submissions from the parties, that plaintiff was aware of it both because it was filed on ECF, and because she referred to it in later stipulating that the recommended renovation was a necessary part of the accommodation.

plaintiff has made no showing that they would not have done so anyway.  Indeed, given her concession that the renovation was a necessary part of the court-ordered accommodation, it appears that their interests were aligned.  I cannot hold defendants in contempt of such a vague directive, or hold them responsible for the cost of this motion on such a speculative showing.

## CONCLUSION

Plaintiff's motion for an order finding defendants in contempt is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       June 19, 2015